IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| June Gail Ducoff, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 0:13-1484-RMG |
| vs. ) | |
| ) | |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of Social Security, ) | **ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff has brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). In accord with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation on June 26, 2014, recommending that the Commissioner's decision be affirmed. (Dkt. No. 24). Plaintiff filed objections to the Report and Recommendation and the Commissioner filed a reply. (Dkt. Nos. 26, 27). As more fully set forth below, the decision of the Commissioner is reversed and remanded for further action consistent with this order.

**Legal Standard**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is

made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

The Commissioner, in passing upon an application for disability benefits, is required to undertake a five-step sequential process. At Step One, the Commissioner must determine whether the applicant is engaged in substantial gainful work. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not engaged in substantial gainful employment, the Commissioner proceeds to Step Two, which involves a determination whether the claimant has any "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). If the claimant has one or more severe impairments, the Commissioner proceeds to Step Three, which involves a

determination whether any impairment of the claimant satisfies any one of a designated list of impairments that would automatically render the claimant disabled. *Id.* § 404.1520(a)(4)(iii). Further, even if a claimant's condition does not meet all of the requirements of a listing, a claimant may be declared disabled at Step Three if she is able to show that another impairment or combination of impairments are the medical equivalent of the listed impairment. 42 U.S.C. § 423(c)(2)(b); *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); 20 C.F.R. § 404.1526(b).

If the claimant does not have a listed impairment, the Commissioner must proceed to Step Four, which involves an assessment of the claimant's Residual Functional Capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4)(iv). This requires assessment of the claimant's ability "to meet the physical, mental, sensory, and other requirements of work." *Id.* § 404.1545(a)(4). In determining the claimant's RFC, the Commissioner "must first identify the individual's functional limitations or restrictions" and provide a narrative "describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." SSR 96-8P, 61 Fed. Reg. 34474, 34475, 34478 (July 2, 1996).

Once the claimant's RFC is determined, the Commissioner must assess whether the claimant can do his past relevant work. 20 C.F.R. §§ 404.1520(4)(iv), 1545(a)(5)(i). If the claimant, notwithstanding the RFC determination, can still perform his past relevant work, he is deemed not to be disabled. If the claimant cannot perform his past relevant work, the Commissioner then proceeds to Step Five to determine if there is other available work in the national economy he can perform in light of the RFC determination. *Id.* § 404.1520(a)(4)(v).

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating

physicians. *Id.* § 404.1545. The regulation, known as the "Treating Physician Rule," imposes a duty on the Commissioner to "evaluate every medical opinion we receive." *Id.* § 404.1527(c). The Commissioner "[g]enerally . . . give[s] more weight to opinions from . . . treating sources" based on the view that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* § 404.1527(c)(2). Further, the Commissioner "[g]enerally . . . give[s] more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]." *Id.* § 404.1527(c)(1).

Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight. Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh those opinions in light of a broad range of specifically identified factors, including the examining relationship, the nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician is a specialist. *Id.* §§ 404.1527(c)(1)-(5). The Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. SSR 96-2P, 61 Fed. Reg. 34490, 34492 (July 2, 1996).

## Factual Background

Plaintiff, who formerly worked as a housekeeper but has not engaged in employment since July 2008, asserts a claim of disability under the Social Security Act primarily based upon

degenerative disc disease and degenerative joint disease, which she asserts causes her severe pain 24 hours per day, seven days per week. Transcript of Record ("Tr.") 54, 406, 427, 457, 495, 521, 548. Plaintiff had a long history of complaints relating to severe back pain with radiating pain and numbness to the lower extremities. After conservative treatment failed and an MRI of the lumbar spine performed on October 7, 2009, revealed nerve root compression, a "broad based disc bulge" and other abnormalities, Plaintiff underwent an anterior interbody fusion at L4-5 with the placement of hardware on January 21, 2010. Tr. 251-52, 255-57. The anterior interbody fusion, one of the most complex and involved neurosurgerical procedures performed, was conducted by Dr. Brett Gunter, a neurosurgeon. The January 2010 surgery appeared to resolve Plaintiff's radicular pain to her lower extremities and after six months Dr. Gunter observed that she appeared to be "steadily improving" and was on a "satisfactory post operative course." Tr. 337.

However, by September 2010, the medical record reveals that Plaintiff was complaining about severe back pain and her persistent complaints of pain were evaluated and treated by a pain specialist, Dr. Steven Storick, and her family physician, Dr. C. P. Dunbar.[1] Plaintiff was seen by her neurosurgeon, Dr. Gunter, on September 28, 2010, who documented her complaint of severe lower back pain and referred her to a pain specialist. Tr. 335-36. Plaintiff was seen the same day in Dr. Dunbar's office, where the office note describes "severe back pain" since her lumbar

---

[1] Plaintiff's pain management treatment was apparently provided primarily by a nurse practitioner, Christy C. Dunbar, N.P., and the treatment notes were routinely reviewed and countersigned by Dr. C. P. Dunbar, M.D, a board certified family physician. *E.g.*, Tr. 557-62. The Dunbars are husband and wife and practice together. Tr. 47.

fusion surgery of 10/10[2] which rendered her unable to work. Tr. 557. Plaintiff was prescribed 15 mg. of morphine to treat her pain symptoms and she was diagnosed with "chronic pain syndrome." Tr. 560, 561.

Plaintiff was seen again in Dr. Dunbar's office on October 29, 2010, where she complained that her "pain is much worse." It was noted that Plaintiff was also seeing a neurologist and a neurosurgeon for her pain symptoms. Tr. 545. The record shows that Dr. Dunbar was consulted by the nurse practitioner about the treatment plan and it was agreed that her morphine would be doubled to 30 mg. per day. Tr. 547. As part of this office visit, Plaintiff was asked to complete a questionnaire regarding her pain symptoms. She described her pain to be 8 or 9 on a 10 point scale that was "burning", "stabbing", "throbbing" and "shooting." Tr. 548. Plaintiff indicated that the pain was worse with "a lot of standing, walking or climbing" and "sometimes" improved with laying down. *Id.* She also stated she had difficulty walking. *Id.*

Plaintiff was seen by her pain specialist, Dr. Storick, on February 28, 2011, to discuss her treatment options. Dr. Storick documented that Plaintiff's pain was worse with "prolonged activity, climbing, stairs and bending" and "generally the pain is constant." Tr. 350. Dr. Storick noted that Plaintiff's leg symptoms had resolved with the January 2010 surgery but her back pain persisted. *Id.* After assessing his patient, Dr. Storick informed her, per his record, that she had "mechanical back pain" in which there was no "simple or singular solution." *Id.* He suggested that she try injections and medications and informed her that "a reasonable expectation is

---

[2] Plaintiff described her degree of pain on a ten point scale, with 1 being the lowest and 10 being the highest, as 10/10. Tr. 557.

reducing her pain by 50%." *Id.* Dr. Storick encouraged Plaintiff to remain physically active and to work on weight loss. *Id.*

Plaintiff thereafter underwent several injections administered by Dr. Storick and there was some initial indication that she was realizing some benefit. Tr. 330, 339, 344, 516, 578. She also continued to receive daily doses of 30 mg. of morphine along with other pain medications and muscle relaxers. Tr. 462, 463, 474, 499, 504, 507, 510, 516, 524. However, in a October 3, 2011 appointment in Dr. Dunbar's office, the record noted that she was "still having bad pain, spasms," and Plaintiff stated in an office pain questionnaire that "everything" makes pain worse and her pain remained 7 out of 10 with her medications. 449, 457. By her December 1, 2011 appointment with Dr. Dunbar's office, Plaintiff reported her back pain was now 9 out of 10 with medications and her diagnosis continued to include chronic pain syndrome. Tr. 401, 406.

The Commissioner is required at Step Two of the sequential analysis to identify all impairments, both severe and non-severe, and to make a specific finding concerning any impairments which are severe. 20 C.F.R. § 404.1520(a)(4)(ii). A determination of whether an impairment is severe is a threshold determination and "is not a difficult hurdle for a claimant to clear." *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 474 n.1 (4th Cir. 1999). An impairment is not severe "only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work . . . ." *Evans v. Heckler*, 734 F. 2d 1012, 1014 (4th Cir. 1984). Further, it is important for the Commissioner to address both severe and non-severe impairments since she is obligated to consider the combined effect of all impairments in Step Three and, if necessary, at subsequent steps of the sequential analysis. 42 U.S.C. § 423(d)(2)(B); *Walker,* 889 F.2d at 50.

The Administrative Law Judge ("ALJ") identified at Step Two only two impairments, degenerative disc disease and degenerative joint disease. Tr. 15. No mention is made of Plaintiff's chronic pain syndrome or persistent problems with severe back pain as either a severe or non-severe impairment. Plaintiff further notes in her objections that the ALJ did not address other potential impairments, including Plaintiffs' diagnoses of "depression with anxiety", congestive heart failure and obesity. (Dkt. No. 26 at 2).

The failure of the ALJ to address all impairments, particularly the very clear documentation of Plaintiff's severe post operative back pain requiring chronic administration of 30 mg. daily of morphine, fundamentally undermines the validity of the assessment of Plaintiff's condition at Step Three and subsequent steps of the sequential analysis. The analysis, at every step of the sequential process, requires a consideration of the combined effects of all of Plaintiff's impairments. It takes little imagination for the Court to appreciate that a combination of significant degenerative disc disease and degenerative joint disease with severe, unremitting back pain, as asserted by Plaintiff and documented by at least two treating doctors, could potentially impact the disability determination of the Commissioner.[3] Moreover, it is quite apparent to the Court that the ALJ gave little consideration to the symptoms of severe pain and the treatment afforded by Dr. Storick and Dr. Dunbar during the period from September 2010, when the administration of morphine began, until the medical record ends in December 2011.

---

[3] Even without a proper consideration of her severe post operative back pain, the ALJ determined that Plaintiff was limited to light work. Tr. 16. She was determined to be capable of returning to her former work as a house cleaner, which thereby defeated her disability claim. Tr. 21. If the ALJ, after conducting a full and proper analysis of the combined effects of all impairments, determined that Plaintiff could not return to her former work as a house cleaner, she would, due to her advanced age and limitation to light work, be deemed disabled under the Social Security Act. 20 C.F.R. Part 404, Subpart P, Appendix 2 § 201.04.

Indeed, this period of treatment, which involved more than three dozen office visits, was mentioned by the ALJ in a one-sentence paragraph during the Step Four analysis that did nothing more than serially listed Plaintiff's many diagnoses and conditions that arose during this period. Tr. 17.

The Court reverses the decision of the Commissioner and remands the matter to the agency pursuant to Sentence Four of 42 U.S.C. § 406(g) to conduct a proper Step Two analysis and identify all impairments, both severe and non-severe. Once that process is completed, the Commissioner must conduct a proper analysis under Step Three and, if necessary, other steps in the sequential process, that fully considers and describes the combined effect of all of Plaintiff's impairments. *Walker*, 889 F.2d at 50.

AND IT IS SO ORDERED.

_____
Richard Mark Gergel
United States District Judge

Charleston, South Carolina
July 30, 2014